[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED SEPTEMBER 19, 1997
I. FACTUAL AND PROCEDURAL BACKGROUND
In October 1993, Anne and Malinda[1] (hereinafter the "plaintiffs" or "petitioners") petitioned the Probate Court for the district of Ledyard for the adoption of Baby Z, Anne's biological child, by Malinda without terminating the parental rights of Anne. (ROR, Item 8 at 3.) The Probate Court denied the petition on the ground that "th[e] case [did] not comply with any of the existing statutory provisions for adoption." (ROR, Item 8 at 3.) The petitioners timely appealed the Probate Court's ruling to the Superior Court at the Judicial District of New London at Norwich. (ROR, Item 8 at 3.) In a memorandum of decision filed April 24, 1996, the Superior Court (Austin J.) remanded the case to the Probate Court with instruction to refer the matter to the Adoption Review Board (hereinafter the "Board") for waiver of the "statutory criteria of `statutory parent,'" and thereafter instructed the Probate Court to grant the adoption [16 CONN. L. RPTR. 617]. (ROR, Item 8 at 12, 24-25.)
On June 17, 1996, the Probate Court made application to the Board for a waiver of the "placement requirement" pursuant to CT Page 3238 General Statutes § 45a-764(b). (ROR, Item 3.) On July 17, 1996, the Board conducted a hearing pursuant to the application, (ROR, Item 7) and, on July 18, 1996, the Board denied the application on the ground that the Board lacked jurisdiction or authority to grant a waiver on the facts presented to it. (ROR, Item 14.) Specifically, the Board found that "[i]n this matter the child is not free for adoption in that the natural mother's rights have not been terminated and she wishe[sl to retain her parental rights as in a stepparent adoption. The Adoption Review Board does not believe that it possesses the authority, power or jurisdiction to waive the clear language of the adoption statutes." (ROR, Item 14.) This administrative appeal followed.
On September 30, 1996, the Attorney General's Office filed an appearance on behalf of the Board.[2] Both the petitioner and the defendant Adoption Review Board filed briefs, and on June 11, 1997, this court heard oral argument. At the time, all parties were represented and had ample opportunity to be heard.
 II. DISCUSSION A. Standard of Review
The plaintiffs bring this appeal pursuant to General Statutes § 4-183(a). The standard of review for an appeal brought pursuant to § 4-183(a) is set forward in § 4-183(j).[3]
The Supreme Court has stated that "[i]n reviewing an administrative decision, it is not the function of the trial court to retry the case. The court is forbidden by statute from substituting its judgment for that of the agency as to the weight of the evidence on questions of fact." Nelseco Navigation v.Dept. of Liquor Control. 34 Conn. App. 352, 641 A.2d 827 (1994). However, if the appeal turns on the interpretation of a statute, the issue is a matter of law requiring that the intent of the legislature be discerned. State Medical Society v. Board ofExaminers in Podiatry, 208 Conn. 709, 717, 546 A.2d 830 (1988). "Such a question invokes a broader standard of review than is ordinarily involved in deciding whether, in the light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." Id. "Ordinarily . . . [the reviewing court] give[s] great deference to the construction given a statute by the agency charged with its enforcement . . . [H]owever . . . [an administrative agency] is not entitled to special deference particularly where . . . the statute has not previously been subjected to judicial scrutiny or timetested agency interpretations." Id.
CT Page 3239
B. Exhaustion of Administrative Remedies
The Uniform Administrative Procedures Act requires that a party exhaust its administrative remedies in order to have standing to bring an appeal. General Statutes § 4-183. "[I]f an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." LaCroix v. Board of Education, 199 Conn. 70, 83-84,505 A.2d 1233 (1986), quoting Connecticut Mobile Home Assn., Inc. v.Jensen's, Inc., 178 Conn. 586, 588, 424 A.2d 285 (1979). This court has previously determined that the Adoption Review Board is an agency for purposes of the Uniform Administrative Procedures Act. See In re Adoption of Baby Z, Superior Court, Judicial District of New London at Norwich, Docket No. 119915 (May 23, 1997) (Handy, J.). Subsequent to the remand of this case to the Probate Court, the Adoption Review Board denied the Probate Court's application for a waiver of the "placement requirement" on the ground that it lacked the authority or jurisdiction to waive the clear language of the adoption statutes. No additional procedure is available to the plaintiffs at the administrative level. Thus, the plaintiffs have no recourse but to appeal the decision of the Board to the appropriate superior court. The exhaustion requirement has been satisfied in this case.
C. Aggrievement
In addition to the exhaustion requirement, the Uniform Administrative Procedures Act requires that a party be aggrieved in order to have standing to bring an appeal. General Statutes § 4-183. "Aggrievement as a concept of standing is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal . . ." Honan v.Greene, 37 Conn. App. 137, 144, 655 A.2d 274 (1995). The fundamental test for determining classical aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the challenged action, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the challenged action." (Brackets omitted.) R R Pool Home, Inc. v. Zoning Board of Appeal,43 Conn. App. 563, 570-71, 684 A.2d 1207 (1996). CT Page 3240
A review of the return of record reveals that Anne is the biological mother of Baby Z. (ROR, Item 2.) With the expressed approval of Anne, Malinda petitioned the probate court to formally adopt Baby Z without terminating the parental rights of Anne. (ROR, Item 2.) The Probate Court denied the petition and the petitioners appealed. (ROR, Item 8 at 3.) The Superior Court (Austin, J.) remanded the case to the Probate Court with the instruction that it refer the matter to the Adoption Review Board for waiver of the "placement requirement" pursuant to General Statutes § 45a-727 (a)(3). (ROR, Item 8.) The Adoption Review Board rejected the petitioner's application on the ground that it did not have jurisdiction or authority to waive the underlying statutory requirements. (ROR, Item 14.) The plaintiffs have appealed that decision and this court finds that they have a specific, personal and legal interest in the challenged action and that the Board's rejection of the application inflicts a specific injury on the plaintiffs. Accordingly, this court finds that the plaintiffs are classically aggrieved and have standing to bring this appeal.
C. Claims of Law
The issue on appeal is whether the Adoption Review Board correctly determined that it lacked the authority or jurisdiction to grant a waiver of the "placement requirement" pursuant to a statutory parent adoption upon the facts of this case. The court answers that question in the negative.
In support of their appeal, the plaintiffs assert the following arguments: (1) the Adoption Review Board exceeded its authority under General Statutes § 45a-763 et seq. and ignored a binding ruling of the Superior Court; (2) the actions of the Adoption Review Board, if allowed to stand, would violate the plaintiffs' and Baby Z's constitutional right to equal protection; and (3) the decision of the Adoption Review Board would fly in the face of a national trend toward allowing unmarried couples to adopt each other's children.[4]
The defendant Board asserts the following arguments in defense of its decision: (1) the Adoption Review Board properly considered the permissible limits of its jurisdiction as to this case; (2) the Adoption Review Board correctly decided that it lacked jurisdiction; (3) the Superior Court (Austin, J.) did not, nor could it, order the Adoption Review Board to grant a waiver; CT Page 3241 (4) the narrow issue before this court does not implicate constitutional issues since the plaintiffs are not asserting that the Adoption Review Board acted unconstitutionally or that the enabling statute is unconstitutional; and (5) the plaintiffs' reliance on a "growing trend" is misplaced and irrelevant.
The purpose of this administrative appeal is not to "retry" the issues that were before the Superior Court (Austin, J.) in the probate appeal. Thus, the decision on this appeal will be made within the context of the court's prior ruling in the probate appeal. What is left for this court to determine is whether the Adoption Review Board correctly decided that it lacked jurisdiction or authority to grant a waiver under the facts of this particular case. In order to determine this issue, it is necessary first to retrace Judge Austin's earlier decision.
In his memorandum of decision (hereinafter the "decision"), dated April 24, 1996, Judge Austin remanded the petitioner's appeal to the Probate Court "with direction to refer the matter to the adoption review board pursuant to General Statutes §45a-764. Upon waiver, the probate court was further directed to grant the adoption consistent with procedures for stepparent adoption so as to avoid termination of the biological mother's parental rights." (ROR, Item 8 at 31.) In its decision, the court made the finding that the adoption was in the best interest of Baby Z and that the adoption statutes should be liberally construed so as to avoid any procedural impediments to the adoption.[5] (ROR, Item 8 at 19, 25.)
Upon remand, the Probate Court made application to the Board for a waiver of the "placement requirement" in compliance with the court's ruling. After a hearing, the Board determined that it did not have the jurisdiction or authority to grant a waiver in this case on the ground that the child was not "free for adoption"[6] (ROR, Item 14). The Board's refusal to grant the waiver on jurisdictional grounds puts at issue the scope of authority granted to the Board by its enabling statutes.
In construing a statute, the fundamental goal "is to ascertain and give effect to the apparent intent of the legislature . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same CT Page 3242 general subject matter." Hall v. Gilbert and BennettManufacturing Co., Inc., 241 Conn. 282, 295 (1997). The role, scope, and function of the Adoption Review Board is determined by General Statutes § 45a-763 et seq. In particular, §45a-764(a)-(g)[7] establish the procedural relationship between the probate court, the parties, and the Board. Section 45a-764(a) states that when a probate court predetermines that a statutory parent adoption cannot proceed because the child has not been placed by the Commissioner of Children and Families or a child-placing agency, the probate court may make application to the Adoption Review Board for waiver of the placement requirement in order to permit an otherwise meritorious adoption to proceed.[8] General Statutes § 45a-764(a). Section §45a-764(c) provides that upon receipt of the application, the Board is required to hold a hearing and to give notice of the time and place of the hearing to the probate judge and all parties to the adoption proceeding.[9] General Statutes §45a-764(c). Section § 45a-764(g) states that the Board may not grant a waiver if it determines that the adoption proceeding would violate the public policy of the state against the obtaining of children by illegal means for adoption purposes. General Statutes § 45a-764(g).
A review of the legislative history of General Statutes §§45a-763 et seq. reveals that the Board was established "to help those very few, but very compelling hardship cases where a child has not been placed by the Commissioner of . . . [Department of Children and Family Services] or a child-placing agency and therefore, cannot formally be adopted."[10] Senate Proceedings, April 29, 1975, Comments of Senator Neiditz.
Representative Healey, in introducing the legislation, explained the procedural function of the Board as follows: "In the event that a petition is made to a judge of probate, where the condition precedent of placement by the Commissioner or by a child-caring agency has not been met, then if the judge of probate feels that despite the fact that this condition had not been met, but the application is meritorious, he may refer the application to this Board. The Board then, within the period of not less than 10 nor more than 30 days after receipt of the reference from the judge of probate, is to hold a hearing to inquire into the situation to determine whether or not it is one of these limited meritorious situations. If it determines it to be one where adoption would be proper, it may then authorize the judge of probate to proceed. If it feels that the situation does CT Page 3243 not fall within these guidelines, then it may deny the application and no further steps may be taken. It provides, sir, a very real safety value which we have not had before and I think it fills a very real gap in the law." Id.
Upon review of the enabling statutes and the legislative history, it is clear that the purpose of the Adoption Review Board is to review those cases where adoption is otherwise meritorious but where the child has not been placed by the state or a private agency and a waiver of the placement requirement is necessary in order to complete an adoption.
While this court agrees that the Adoption Review Board has authority to determine its own jurisdiction, see Cannata v.Department of Environmental Protection, 215 Conn. 616, 623,577 A.2d 1017 (1990), consideration of factors other than those comprehended by the enabling legislation exceeds that authority.[11] The Board determined that it did not have jurisdiction to grant a waiver in this case because the child was not "available for adoption." Such a determination goes to the merits of an adoption and is quite separate from whether the placement requirement should be waived.[12] The merits or advisability of an adoption are solely at the discretion of the Probate Court, or, on appeal, with the Superior Court. This is made clear by examining the Probate Court Administrator's directive as to the role of the Adoption Review Board.
In a memorandum dated November 1995, a procedure is established for those situations in which a probate judge believes that a waiver of the "placement requirement" in a statutory parent adoption may be necessary.[13] (ROR, Item 11.) First, it is important to note that most of the information contained in the memorandum is directed to the judges of probate not to the Adoption Review Board. (Id.) Thus, the instructions addressing the termination of parental rights or the appointment of a statutory parent are procedures to be followed, or not, by the Probate Court. (Id.) The only role for the Adoption Review Board is, upon receiving an application, to hear evidence regarding the waiver of the "placement requirement" and to make a determination based on the statutory criteria set forward in § 45a-763 et seq. By statute the Board is mandated to determine whether waiver is in the 1) the best interest of the child, and 2) whether public policy would be violated by granting the waiver. General Statutes § 45a-764(b)(g). The Probate Administrator's memorandum concludes: "[t]he Adoption Review CT Page 3244 Board will not render any opinion as to the advisability of the adoption itself. This is a matter which is wholly in the discretion of the probate judge, as it always has been."[14]
(Emphasis added.) (ROR, Item 11.)
As discussed earlier, the court (Austin, J ) was confronted by an adoption that it believed was clearly in the best interest of the child but which did not fit into any of the three types of adoptions available by statute. Thus, guided by the legislature's directive to read the statutes liberally in the best interest of the child,[15] and acknowledging that the public policy driving the creation of the narrow statutory guidelines, e.g. "black" market adoptions, was not present in this case, the court crafted a hybrid of the statutory parent and stepparent adoption procedures and implemented the individual safeguards of each.
From the stepparent adoption procedure, the court borrowed the retention of the biological mother's parental rights. From the statutory parent adoption, the court borrowed a procedure that was not dependent on marital status or blood-relation. Ultimately, the court determined that it would treat the adoption as a statutory parent adoption subject to the biological mother's retention of her parental rights.[16]
Upon review of the enabling statutes, this court determines that the Board has jurisdiction to hear the application in this case. Thus, this case is remanded to the Board with the following instruction. Upon receipt of the application, the Board is directed to make a determination as to whether waiver of the "placement requirement" is appropriate in this case using the following criteria: (1)whether waiver is in the best interest of the child, and (2) whether waiver would undermine the public policy against "obtaining children by illegal means" which underlies Connecticut's strict adoption laws. The statute provides that the Board will hold an evidentiary hearing with proper notice to all parties to the adoption proceeding. After such hearing, and in the time allotted by statute, the Board will notify the Probate Court of its decision whether, or not, waiver is granted in this particular case and state with specificity the reason(s) for its decision in keeping with the statutory requirements. All orders from the court's (Austin, J.) prior memorandum of decision as to the probate appeal remain in effect.
III. CONCLUSION CT Page 3245
The plaintiff's appeal is remanded to the Adoption Review Board for disposition in keeping with the above-stated opinion.
HANDY, J.